# Lauer Brewing Company, Limited, Appellant, v. Schmidt.

*Principal and agent—Scope of authority of agent—Implied powers.*

As to third parties, the liability of the principal for the acts of his agent is measured not merely by the authority actually given, but by the authority essential to the business of the agency, and the authority held out by the principal as possessed by the agent, or the apparent authority which he permits the agent to assume. No express terms are required to define the agent's powers. The relation of principal and agent implies a grant of the powers necessarily incident to the purposes of the agency, or which, by established usage, may properly be employed in carrying out those purposes.

A person dealing with an agent is bound to ascertain the extent of the agent's authority, and this is particularly the case in dealing with him for the first time ; in subsequent dealing he may assume that the original authority continues, unless informed to the contrary. The mere designation of general agent is not sufficiently specific. A general agency in a particular branch of the principal's business implies no power in connection with any other branch.

It is always competent for the principal to show the scope and extent of the agent's authority ; and it is always competent for a person dealing with an agent to show that the acts of the agent, in excess of his express au-

thority, are nevertheless within the scope of the authority which the principal has permitted him to assume, or which, by a course of dealing or otherwise, he has been held out by the principal, either to the public in general or to the person dealing with him, as possessing.

The declarations of an agent are not competent evidence of the extent of his powers until after some evidence tending to show that he has the authority which he assumes to exercise. Evidence of an authority substantially different is insufficient.

The general collector of a brewing company, whose power is limited to settling the accounts of the selling agents and establishing new agencies with the company's approval, has no power to make a contract with a so-called agent who is really a purchaser of beer, by which the latter is to receive a compensation for services, and is to be relieved from liability for accounts not collected. Declarations of the general collector, who was dead at the time of the trial, are not admissible to show that he had authority to make such a contract on behalf of his employer.

Argued Dec. 7, 1903. Appeal, No. 81, Oct. T., 1903, by plaintiff, from judgment of C. P. Schuylkill Co., Nov. T., 1901, No. 75, on verdict for defendant in case of Lauer Brewing Company, Limited, v. Christian Schmidt. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit for balance alleged to be due on a contract. Before BECHTEL, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial when Constantine Metz, a witness for defendant, was on the stand, he was asked this question:

Q. Go on and tell us what arrangement was made between Mr. Killian and Mr. Schmidt on or about August 15, 1899, about Mr. Schmidt taking charge of the business for the Lauer Brewing Company at Ashland?

Mr. Smith: Objected to that no such authority in Killian has been shown as would bind the plaintiff by what he said or is alleged to have said.

The Court: It appearing that whatever arrangement was made with Schmidt was made by Killian, and that on Killian's action in the making of the arrangement with Schmidt the beer and other articles sought to be recovered for now were shipped and furnished to Schmidt, thereby, as we understand, showing that the plaintiff recognized the action of Killian or the authority of Killian to make arrangements in this particu-

lar case, we think the defendant should now be permitted to prove what the arrangement was.

Plaintiff excepts.   Bill sealed.  [1]

A.  About August 15 Mr. Schmidt and Mr. Killian came into my place of business and Killian says,  " It is too bad that we cannot sell beer here."   He says to Mr. Schmidt,  " Christ, why do not you go and run it? "   He says,  " I am sure you can sell beer."   He allowed that up to the time that they could get an agency.   Well, Schmidt allowed that he had too much already to attend to at Shenandoah, that he did not feel like taking it, and the same time he allowed he did not want to run the risk. And so they had quite a talk in the back room together and they called me in.

Mr. Smith : Have you been telling us what took place before you were called in ?

A.  This took place between the three of us, what I have said.   They called me in, and Mr. Killian said that he kind of has Mr. Schmidt now going, that he would take it, what it would cost to run it with one horse.   I told him that I would feed the horse and for stable rent I would charge $12.00 a month, and then I told him I was in pretty bad circumstances at the time myself, whether they would not take my boy and leave him drive the wagon.   So Killian says,  " That will suit all right, also, Mr. Schmidt."   Then Killian wanted to know what price he would want.   I told him they ought to make it about $10.00 a week, which they did.   As soon that was over Mr. Killian says,  " Well, now I go right up and order the beer for to-morrow," and on the sixteenth, in the morning, the beer came in the name of Christ Schmidt.   That is about all I know of the transaction.   Q. State whether or not there was anything said by Mr. Killian as to Mr. Schmidt's liability at that time for the agency, if anything.   A. He said that he would not lose anything, that he would be responsible for it.

The Court : Who said that ?

A. Mr. Killian.   Mr. Schmidt would not have took it, he said ; he would not take it in regard he would not want no risk.   He said all he needed was to give his name in regard to the license, and that is, have charge over it, take charge over it ; also to collect the money that he put in the bank, which as much as I know the boys took it in the bank.

Mr. Smith : Just tell us what was said there.

Q. State whether or not it was stated at that time that the boy who was to act as the driver was to collect all the money from customers and deposit it in the bank? A. Yes, sir. Q. State whether or not he was to report to Mr. Schmidt every day what the dealings were? A. That was the understanding.

Mr. Smith : You are saying what was said there?

A. I heard them saying that. Q. The arrangement between Killian and Schmidt there was that Mr. Schmidt was not to be liable for anything that happened at this agency? A. I understood it that way from Mr. Killian, that is, for a certain time up till he got another man. Q. The license year begins about February 1 of every year, does it not? A. Yes, sir. Q. And this was in August, 1899, when this conversation took place at your place in Ashland? A. Yes, sir. Q. And after that did that business continue then at Ashland and for how long, if you know? A. I guess till about April. Q. April of what year? A. 1900. Q. Can you tell us whether or not the business was carried on up till about October, 1900? A. If I am allowed I have a note of it in my pocket, and I can give the exact date, I think. Q. If you can, give it to us? A. I think I have it. Q. I understood you to say that the boy's salary was fixed at $10.00 per week as driver? A. Yes, sir. Q. Do you know how many weeks he continued? A. I think it was fifty-eight and a half (witness consults memorandum). Q. That was paid to you out of this business? A. Yes, sir. Q. Were you paid $12.00 a month for the horse feed and stable rent during this time? A. Yes, sir.

Verdict and certificate for defendant for $187.56, upon which judgment was entered for defendant generally, the amount of the certificate having been remitted. Plaintiff appealed.

*Error assigned* among others was (1) ruling on evidence, quoting the bill of exceptions.

*E. D. Smith*, for appellant.—The admission of the evidence of Metz depended wholly on proof of Killian's authority. The latter's declarations were not proof of his agency: Clark v.

Baker, 2 Whart. 340 ; Chambers v. Davis, 3 Whart. 40 ; B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579. And without proof of Killian's authority, evidence as to his declarations were inadmissible : Plumsted v. Rudebagh, 1 Yeates, 502 ; Grim v. Bonnell, 78 Pa. 152 ; B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579 ; Beal & Simons v. Express Co., 13 Pa. Superior Ct. 143 ; Slease v. Naysmith, 14 Pa. Superior Ct. 134 ; Pepper v. Cairns, 133 Pa. 114 (121) ; Moore's Exrs. v. Patterson, 28 Pa. 505 ; Central Penna. Tel. Co. v. Thompson, 112 Pa. 118 (131–2).

There was no attempt to prove the agency by either specific authority or by a general course of dealing, but only by general authority. This was positively and repeatedly denied by Mr. Lauer, and under the above authorities the proof fell short of what the law requires.

Every one who transacts business with an agent is bound to make inquiry and inform himself as to the nature and extent of his authority. He cannot plead ignorance or even misrepresentation by the agent himself : Phila. Trust Co., Admr., v. Roberts, 14 W. N. C. 123.

*M. M. Burke*, with him *W. L. Kramer*, for appellee.—The testimony of Metz was properly admitted, and that there was ample before the court to warrant submitting to the determination of a jury the question of Killian's authority to bind his principal, the plaintiff company : Beal & Simons v. Express Co., 13 Pa. Superior Ct. 143.

Where some evidence of agency has been given, it is competent to give in evidence acts and declarations of the alleged agent respecting the subject-matter of his authority : Central Penna. Telephone & Supply Co. v. Thompson, 112 Pa. 118.

OPINION BY SMITH, J., March 14, 1904 :

The plaintiff, a brewing company, established what it describes as " agencies " for the sale of its products. As thus employed, however, the words " agency " and " agent " must be regarded as in the nature of trade names. The person conducting the so-called agency was in no sense an agent. He was in fact a purchaser at wholesale, buying at a stipulated price, and selling not for the manufacturer but for himself. In

the conduct of his business he was wholly independent of the manufacturer, was without authority to bind him in any manner, and without responsibility to him except for the price of the goods received. The defendant had conducted one of these agencies at Shenandoah for many years, and in August, 1899, took charge of another at Ashland. In the fall of 1900 both appear to have been discontinued. Upon a settlement made November 12, the defendant was found in debt to the plaintiff $6,251.54 for beer received at Shenandoah. Subsequently, and before the commencement of the present suit, this was paid. No settlement appears to have been made for the beer received at Ashland, and the matter stood until September 13, 1901, when this action was commenced. In this, there is no dispute as to the value of the beer received or the payments made by the defendant; and the balance, claimed by the plaintiff, is $1,430.85. The defendant, however, contends that he is entitled to further credits, sufficient not only to extinguish this balance, but to show a balance of $657.58 in his favor. As to some of these credits, there is no contention. The defendant's right to credit for unsalable beer returned, for horseshoeing and repairs to wagon, and to certain freights, is admitted. The right to credit for his own services, for a driver's wages, for the maintenance of a horse, and for outstanding book accounts, is denied, and the controversy on trial was in relation to these items.

The engagement of the defendant as agent at Ashland was made by John M. Killian, an employee of the plaintiff. The defendant claims the credits in dispute under an agreement, alleged to have been made by Killian, fixing the terms of his engagement. The plaintiff denies that Killian had authority to make such agreement. The defendant's right, therefore, depends on Killian's authority in the premises.

As to third parties, the liability of the principal for the acts of his agent is measured not merely by the authority actually given, but by the authority essential to the business of the agency, and the authority held out by the principal as possessed by the agent, or the apparent authority which he permits the agent to assume. No express terms are required to define the agent's powers. The relation of principal and agent implies a grant of the powers necessarily incident to the purposes of the agency, or which, by established usage, may properly be em-

ployed in carrying out those purposes. In brief, the agent has the authority of the principal in all matters within the scope of the agency, and, beyond this, all powers which the principal has, either directly or by a course of dealing, held him out to the public, or to those dealing with him, as possessing.

Killian died before the commencement of the suit. The only evidence respecting his authority is found in the testimony of Frank P. Lauer, the plaintiff's general manager. He testified that Killian was the plaintiff's "general collector;" that, as such, he visited the agencies and settled the plaintiff's accounts with them; established new agencies, with Lauer's approval; and that this was the extent of his power. As to the engagement of the defendant, Lauer testified that the agency at Ashland was given him "on the same terms and conditions as other agencies had," these being "that we deliver him the beer there at a certain price, for him to dispose of to the retail trade at his own risk;" also furnishing the agent a horse and wagon, and paying for shoeing the horse and repairs to the wagon. He further testified that Killian reported to him that the defendant "was going to take the agency of the Ashland territory on the same terms as his predecessor," Constantine Metz, and nothing more; that those terms were $5.00 a barrel for the beer, delivered at Ashland,—"Five dollars a barrel and no other arrangement;" that Killian said nothing to him of any agreement making the plaintiff responsible for any bills, for horse keeping, for driver, or for salary, and that he never heard of such agreement before bringing suit. Lauer approved of the engagement as thus reported, and proceeded to ship beer to the defendant at Ashland.

According to the evidence for the defense, the agreement between Killian and the defendant, beyond the authority of the former as defined by Lauer, was that a driver should be employed and a horse maintained at the plaintiff's expense; that the driver should make the collections and deposit them in bank, reporting daily to the defendant; that the defendant should be responsible only for such deposits; and that the defendant should receive a compensation, the amount of which was not fixed. The evidence, on the one side as to the authority actually given by the plaintiff to Killian, and on the other, as to the alleged agreement, was uncontradicted. The defend-

ant conducted the business in conformity with the alleged agreement. It does not appear who made the sales; but all collections were made by the driver, and the money in bank was checked out by the defendant until it was exhausted. The collections were not fully made; and among the items for which the defendant claimed credit were outstanding accounts amounting to $684.75.

A person dealing with an agent is bound to ascertain the extent of the agent's authority, and this is particularly the case in dealing with him for the first time; in subsequent dealing he may assume that the original authority continues, unless informed to the contrary. The mere designation of general agent is not sufficiently specific. A general agency in a particular branch of the principal's business implies no power in connection with any other branch. As an illustration, " A superintendent is defined to be one who has the oversight and charge of something, with the power of direction, as a superintendent of the almshouse or of the public works; but a superintendent may have no authority to furnish supplies or purchase materials for the enterprise he directs : " Central Penna. Telephone Co. v. Thompson, 112 Pa. 118, CLARK, J. That Killian, in the case before us, was the plaintiff's general collector,—a general agent with respect to collections,—gave him no authority beyond the scope of this branch of the plaintiff's business. What his authority may have been respecting methods of making collections, the adjustment of accounts, the allowance of credits, the compromise of claims, fixing and extending the time of payment, the acceptance of securities, or the release of indebtedness, we need not here inquire. Plenary power in relation to these matters implies no power to make the contract alleged to have been made by Killian with the defendant.

"It is always competent for the principal to show the scope and extent of the agent's authority : " Telephone Co. v. Thompson, supra. The authority thus shown is not, however, the only measure of the principal's liability for the acts of the agent. It is always competent for a person dealing with an agent to show that the acts of the agent, in excess of his express authority, are nevertheless within the scope of the authority which the principal has permitted him to assume, or which, by a course of dealing or otherwise, he has been held out by

the principal, either to the public in general or to the person dealing with him, as possessing. " The extent of an agent's powers depends upon the authority under which he acts. This may be shown by his instructions, or his course of dealing. It is true the public are not always bound by the private instructions of the agent, and may hold the principal responsible, though the particular acts done are in excess of his private instructions. This was asserted in Adams Express Co. v. Schlessinger, 75 Pa. 246. It applies to cases where the agent has been held out to the world as such by the principal, allowed to exercise enlarged powers from time to time, and his acts therein have been ratified by his principal. But this doctrine in no sense conflicts with the right of the principal to show that his agent in a given case exceeded his authority : " American Life Ins., etc., Co. v. Shultz, 82 Pa. 46. The burden of proving both the fact of agency, and its scope, lies on him who asserts them. Prima facie, the powers of an agent are limited to those expressly granted, or arising by implication from the character of the grant. The burden of proof lies on him who asserts that they have been enlarged by the acts of the principal.

In the case before us, the plaintiff gave evidence showing the scope and extent of the power expressly given to the agent. The authority thus shown did not extend to the making of the contract in question, or imply a power to make such a contract as incident to the purposes of the agency. The defendant offered no evidence to show a direct and specific enlargement of this authority by the plaintiff, or to prove a single instance tending to exhibit a course of dealing in which Killian was held out by the plaintiff as having authority to make contracts of the character described by the defendant, or was permitted to assume any authority beyond that expressly given. Nor was there any attempt to contradict Lauer's testimony as to the terms to agents, though the defendant, and his witness Metz, having held agencies, had full knowledge on this subject, and evidence respecting other agencies was within reach. On the contrary, inquiry on this point, on the part of the plaintiff, was checked by the defendant's objection. The declarations of an agent are not competent evidence of the extent of his powers until after some evidence tending to show that he has the authority which he assumes to exercise. Evidence of an author-

ity substantially different is insufficient.  Hence the evidence of Killian's agency as a collector did not make his declarations evidence of authority to bind the plaintiff by the contract which he is alleged to have made, since this was wholly beyond the scope of such agency.

There are some features of the transaction with a significant bearing on the question whether the alleged contract was in fact made.  Bills, or statements of the plaintiff's account with the defendant, showing the balance claimed, were repeatedly sent to the defendant.  In business practice, as well as in law, this is understood as a demand for payment.  Yet the defendant, with matters of defense, as he alleges, sufficient to show a large balance in his favor, took no steps to obtain a settlement; he neither gave the plaintiff notice of counterclaims, nor called his attention to the contract on which, as he alleges, these were based, but remained silent until after suit was brought, a period of nearly a year and meantime paid the balance due on the Shenandoah business.  These, however, were matters for the consideration of the jury, had there been evidence of Killian's authority on which the case could be submitted to them.  But there was no such evidence, and the plaintiff's first point should have been affirmed.

The first specification is sustained.  This dispenses with discussion of the others.  The adjustment of credits, referred to in the argument, is substantially a matter of bookkeeping, and if there were errors or omissions respecting these, in submitting the case to the jury, they may readily be corrected on another trial.  The only matter conclusively determined on this appeal is that the evidence given on the trial below, of Killian's authority to make the alleged contract, was not sufficient to warrant the submission to the jury of evidence respecting the terms of that contract.  However, since the proceedings on another trial will be de novo, this question will also remain open for any further evidence on this point.

Judgment reversed and venire de novo awarded.