# Dodge, Appellant, *v.* Williams.

*Principal and agent—Evidence as to agency—General agency.*

1. A person dealing with an agent is bound to ascertain the extent of the agent's authority, and this is particularly the case in dealing with one for the first time. The mere designation of general agent is not sufficiently specific. A general agency in a particular branch of the principal's business implies no powers in connection with any other branch.

2. It is always competent for a person dealing with an agent, to show that the acts of the agent in excess of his express authority are nevertheless within the scope of the authority which the principal has permitted him to assume, or which by a course of dealings, or otherwise, he has been held out by the principal, either to the public in general, or to the person dealing with him, as possessing.

3. The extent of the agent's powers depends upon the authority under which he acts. This may be shown by his instructions or his course of dealing. Prima facie, the powers of an agent are limited to those expressly granted, or arising by implication from the character of the same. The burden of proof lies on him who asserts that they have been enlarged by the acts of the principal.

4. Evidence of the delegation of authority may be shown by the written instrument of the principal, or parol testimony showing a regular course of dealing with the knowledge of the principal, or that an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving the enlargement of his powers, with the knowledge and acquiescence of his principal. Authority cannot be proved by the declarations of an alleged agent, nor by his acts done without the knowledge or authority of the principal.

5. In an action on a contract in writing signed in the defendant's trade name by a person describing himself as vice president and general manager, although no corporation existed, the evidence is sufficient to bind the defendant as principal under the written contract, where it appears that when the defendant was approached on the subject of

making the contract, he directed the plaintiff's representative to deal with the person who signed the contract as one who had full knowledge of the matter with authority to enter into contracts.

Argued April 12, 1911.  Appeal, No. 53, April T., 1911, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1906, No. 469, on verdict for plaintiff in case of F. W. Dodge Company v. J. M. Williams, doing business as The Williams Gauge Company.  Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit on a contract in writing.  Before KENNEDY, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Mr. King was, at the time of the making of the agreement, the partner of Mr. J. M. Williams in the company, and was general manager; that is proved here and is not contradicted, and you may, for the purposes of this case, assume that to be the fact that H. R. Williams was not the general manager or vice president; that is not contradicted; he was not the general manager and vice president at the time of the making of this contract.  So in signing such a title by him it was done entirely without any authority. Mr. King was the sole general manager at that time; that is not contradicted, so that H. R. Williams in signing himself as such acted entirely without authority.]  [1]

[In the first place, this is a copartnership composed of one man only, and that is Mr. J. M. Williams, and it is quite anomalous for one man to be styled the vice president of another and yet this is the way this man H. R. Williams, signs this contract as the vice president and general manager.  There may be such a thing as a man employing a general manager in his business, but it would seem to be absurd for a man to be vice president of another.

Mr. King was, at the time of the making of the agree-

ment, the partner of Mr. J. M. Williams in the company and was the general manager.] [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*William H. Pratt,* for appellant.

*Chas. T. Moore,* for appellee.

OPINION BY ORLADY, J., July 13, 1911:

This action is brought to recover on a written contract executed November 17, 1905, and signed "Williams Gauge Co. by H. R. Williams, V. P. & G. M." The defendant, J. M. Williams, conducted his business as an individual under the trading name of Williams Gauge Company, and for some months he had as a copartner one U. S. King. The exact relation of these parties is difficult to determine from the evidence, further than that J. M. Williams was practically the sole party interested in the business. The defendant denies all liability on the ground that H. R. Williams, who signed the contract, had no authority to bind him as his principal. From the testimony of J. M. Williams, it appears that in November, 1905, and prior to that time, H. R. Williams was employed by him. His relation to the business was described as follows: "He was general clerk and general utility man, and went on the road and sold goods, and done bookkeeping or anything he could do. . . . In the office he had authority to open the mail, and answer letters." One exhibit was offered in evidence in which he had added, by a rubber stamp, to his signature, "General Manager of Williams Gauge Co."

In reference to this particular contract, J. M. Williams testified, "We talked over the matter at different times as we always do to get at an understanding and meaning of these things. He (the plaintiff's representative) came

up a number of times and talked to both I and Harry, and I referred him to Harry as he said, but for the purpose of Harry understanding these things; because he wrote our advertising matter." The plaintiff's manager testified that he had several interviews with J. M. Williams, and that the character of the contract had been fully explained to him, after which the conversation was as follows: "You have got a good thing there, young fellow, no question about it. You talk with Harry. Q. Who is Harry? A. H. R. Williams, vice president and general manager, he said. You interest him. Q. What was said about Harry? A. He is the man that you would have to interest. He has full charge of that; he is appointing agents and hiring salesmen and placing advertisements in journals and periodicals. You interest him. I took him at his word and then dealt with H. R. Williams."

In the charge to the jury, the learned trial judge inadvertently made some misstatements of fact in regard to the relation of Mr. King to this business, particularly saying, "Mr. King was at the time of the making of the agreement, the partner of Mr. J. M. Williams in the company, and was the general manager; that is proven here and is not contradicted, and you may for the purposes of this case presume that to be a fact, that H. R. Williams was not the general manager or vice president. That is not contradicted; he was not their general manager and vice president, at the time of the making of this contract. So in signing such a title by him, it was done purely without any authority." This was the crucial question in the case and could not be disposed of so summarily. Other testimony indicated a very general relation of H. R. Williams to the business. He was not called as a witness as he was not in the employ of J. M. Williams at the time of the trial, or was his whereabouts known. The mere fact that the initials, V. P. & G. M. were added to his name is not material. The question being, did he have authority to bind the Williams Gauge Company as its representative. A person dealing with an agent is bound

to ascertain the extent of the agent's authority, and this is particularly the case in dealing with one for the first time. The mere designation of general agent is not sufficiently specific. A general agency in a particular branch of the principal's business implies no powers in connection with any other branch. It is always competent for a person dealing with an agent, to show that the acts of the agent in excess of his express authority are nevertheless within the scope of the authority which the principal has permitted him to assume, or which by a course of dealings, or otherwise, he has been held out by the principal, either to the public in general, or to the person dealing with him, as possessing. The extent of the agent's powers depend upon the authority under which he acts. This may be shown by his instructions or his course of dealing. Prima facie, the powers of an agent are limited to those expressly granted, or arising by implication from the character of the same. The burden of proof lies on him who asserts that they have been enlarged by the acts of the principal: Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396.

Evidence of the delegation of authority may be shown by the written instrument of the principal, or parol testimony showing a regular course of dealing with the knowledge of the principal, or that an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving the enlargement of his powers, with the knowledge and acquiescence of his principal. Authority cannot be proved by the declarations of an alleged agent, nor by his acts done without the knowledge or authority of the principal: Fee v. Express Co., 38 Pa. Superior Ct. 83.

There was uncontradicted evidence to show that when the representative of the plaintiff appeared at the defendant's office, the subject-matter of this controversy was referred to H. R. Williams, whether for investigation or final disposition is not clear. On a review of the whole evidence, there were questions of fact entering into the

case which could not properly be withdrawn from the consideration of the jury by binding directions in favor of the defendant: Mead & Speer Co. v. Krimm, 43 Pa. Superior Ct. 376. Nor was it correct to say that, "You may, for the purposes of this case, assume it to be a fact that H. R. Williams was not the general manager or vice president." Of course, he would not be the vice president to an individual, and he may not have been general manager of the defendant's business, but if he was held out with apparent authority to make the contract, it was for the jury to say what credit should be given to his act in concluding it. The use of the titles, general manager and vice president, were confusing and were not material, the sole question being the extent of the authority of H. R. Williams, who was admittedly some kind of an agent, with either certain, or uncertain limitations of authority, and this was purely a question for the jury, under proper instructions.

The defendant could not accept the fruit of his contract, and at the same time repudiate the terms or the representations made by him to secure it: National Bank v. Equitable Trust Co., 223 Pa. 328.

A formal notice of cancellation of the contract was made at the end of three months, and payment was made for the services rendered up to that time. This payment was made after the suit was brought, for the reason that he was willing to pay for the services he had actually received from the plaintiff company.

The assumption by the learned trial judge that Mr. King was the general manager at the time the contract was made, and that H. R. Williams had no authority to bind the defendant company would have a controlling effect upon the jury in regard to the only question of fact in controversy, and this should have been submitted to the jury to dispose of. The first and second assignments of error are sustained, the judgment is reversed and a venire facias de novo awarded.