# New York Central & Hudson River Railroad Company, Appellant, *v.* Deer Creek Lumber Company.

*Railroads—Carriers—Discrimination—Contract.*

1. An agreement by a railroad company to place freight on a siding of a competing line at the same rate as that charged by the competing line, is not an agreement involving an unlawful discrimination, where it appears that the railroad company had no published or established rate to the siding in question, and there is no charge that the same concession was ever asked for or desired by any other shipper.

*Railroad company—Principal and agent—Traveling freight agent—Authority of agent.*

2. The traveling freight agent of a railroad company may bind his company by an agreement with a shipper to place freight on a siding of another line at a particular rate, where it appears that the agent had for several years been quoting freight rates to the shipper

and arranging for the latter's shipments, that the agreement in question was the inducement which procured the shipment for the agent's line, and that the agent's authority had never before been questioned or controverted by the railroad company.

3. A principal is bound by the contract of his agent acting within the scope of his apparent authority.

4. The scope of the authority of an agent may be proved by showing what duties he performed, and for what length of time; if the agent's authority to make a contract is disputed by his alleged principal, the latter will not be permitted to ask the agent whether he had authority to make any such contract, and if the agent answers the question in the negative, both question and answer should be stricken out.

Submitted Oct. 25, 1911. Appeal, No. 53, Oct. T., 1911, by plaintiff, from judgment of C. P. Clearfield Co., Sept. Term, 1909, No. 272, on verdict for defendant in case of New York Central & Hudson River Railroad Company v. Deer Creek Lumber Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from judgment of a justice of the peace. Before A. O. SMITH, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial J. S. Hills was asked this question: "Q. Had you authority to make any such contract as is alleged here by Mr. Allen? A. No, sir."

Mr. Woodward: Objected to as incompetent and irrelevant. We want the answer stricken out.

The Court: Motion to strike out the question and answer relating to the authority of the agent is granted and the question and answer stricken out, exception noted to the plaintiff and bill sealed. [7]

The court charged in part as follows:

[Now this conversation you have heard detailed by Mr. Allen and under cross-examination how he maintained that conversation was, because it is right at this point that

the difficulty has arisen. It is a question of fact then, what was the contract. So far as the purposes of this case are concerned and for the present purposes, we say to you that Mr. Hills had the apparent authority, and if he did make this contract, so far as the purposes of this case are concerned had the right to make it on behalf of his company. If the testimony on the part of the defendant here, Mr. Allen, is believed to be correct at your hands and you find that that was the contract, then we say to you that Mr. Hills having the authority to act as traveling freight agent is assumed and presumed to have had the authority to make the contract in question, which was apparently in the line of his authority, and if Mr. Allen acted on that the company are bound thereby.] [1]

Plaintiff presented these points: ·

1. The set-off asked in this case is based upon an agreement which is made by a person unauthorized on behalf of the plaintiff. *Answer:* As you doubtless know, railroad companies are common carriers and are granted certain rights by the commonwealth of Pennsylvania. As such they are not allowed to discriminate in favor of one shipper against the rights of another shipper, and this is an appeal on behalf of the railroad company here to that principle, that the granting of this absorption of the switching charges, if made by the railroad company, would be in violation of their rights as a common carrier and would be discrimination in favor of this defendant. For the purposes of this case, gentlemen of the jury, we say that has nothing to do with your consideration here and we will pass upon that subject hereafter, refusing the points but reserving the legal questions involved. [2]

2. The set-off asked for in this case is based upon an alleged contract which is unlawful and in violation of the laws of this state.

The answer thereto was identical in language with that to the previous point. [3]

Defendant presented these points:

1. If the jury believe that J. S. Hills, the traveling

freight agent of the N. Y. C. & H. R. R. Company, advised J. W. Allen, the manager of the Deer Creek Lumber Company, that if the shipment of the two cars of lumber was made via N. Y. C. & H. R. R. Company the company would absorb the switching charges at Philadelphia and the shipment was thereby secured over N. Y. C. lines, the railroad company is bound by the contract of its agent. *Answer:* It is just what we have said to you, gentlemen of the jury. That is, if you find that Mr. Hills, in his capacity as traveling freight agent, holding himself out as having such authority, did make the contract as alleged by Mr. Allen that he would absorb the switching charges on these two cars going to Frankford, which was not on their line, then there can be a recovery here and the set-off should be allowed. [4]

2. If there is no proof that any other shipper has been denied the same rate of freight from Bigler Siding to Smedley Brothers (Frankford) Siding in Philadelphia by the N. Y. C. & H. R. R. Company for a like service from the same place upon like conditions and under similar circumstances there has been no such discrimination as would render the railroad company liable to a penal action under the laws of the commonwealth of Pennsylvania. *Answer:* For the purposes of this case we affirm that point. [5]

Verdict and judgment for defendant for $17.75. Plaintiff appealed.

*Errors assigned* were (1–5) various instructions as above, and (7) ruling on evidence, quoting the bill of exceptions.

*Thomas H. Murray, James P. O'Laughlin* and *Hazard Alex. Murray,* for appellant.—A railroad company cannot be bound by a contract which the agent has no authority to make where there is no proof of ratification or benefit: Worthington v. Railway Co., 10 Pa. Superior Ct. 117; s. c., 195 Pa. 211; Louchheim v. Somerset Bldg. & Loan Assn., 25 Pa. Superior Ct. 325; s. c., 211 Pa. 499.

A railroad company is not permitted to unduly discriminate by way of rebates, drawbacks or special benefits in favor of one shipper as against others under like conditions and circumstances for the same service: sec. 3 of art. XVII of constitution; sec. 1 of Act of June 4, 1883, P. L. 72; sec. 1 of Act of May 31, 1907, P. L. 352; sec. 1 of Act of May 31, 1907, P. L. 354; Hoover v. R. R. Co., 156 Pa. 220; Baily v. Fayette Gas Fuel Co., 193 Pa. 175; Armour Packing Co. v. United States, 209 U. S. 56 (28 Sup. Ct. Repr. 428).

*Hugh B. Woodward,* with him *A. H. Woodward,* for appellees.—There was no discrimination: Hoover v. Penna. R. R. Co., 156 Pa. 220; Paine v. Penna. R. R. Co., 14 Pa. C. C. Rep. 38; Borda v. R. R. Co., 141 Pa. 484.

The plaintiff company is bound by the action of its agent: St. Louis Gunning Adv. Co. v. Wanamaker & Brown, 115 Mo. App. 270 (90 S. W. Repr. 737); Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396.

The company is bound by the contract of its agent acting within the scope of his apparent authority: Young v. Penna. R. R. Co., 115 Pa. 112; Baltimore & Phila. Steamboat Co. v. Brown, 54 Pa. 77; Parker v. Citizens' Ins. Co., 129 Pa. 583; Tanner v. Oil Creek R. R. Co., 53 Pa. 411.

OPINION BY MORRISON, J., March 1, 1912:

This action originated before a justice of the peace and came into the common pleas on appeal by plaintiff, and having been put at issue and tried and a verdict rendered in favor of defendant for $17.75, and judgment being entered thereon, the plaintiff appealed to this court. While the amount in controversy is small the learned counsel for the respective parties seem to regard it as an important suit.

The plaintiff's claim was for the sum of $53.57 for work and material furnished in building a siding for defendant in May, 1907. At the trial of the case the defendants admitted that they owed the plaintiff that sum but

claimed a set-off in the sum of $72.16 on a contract alleged to have been made with J. S. Hills, traveling freight agent for plaintiff, whereby Hills agreed that if defendants would ship over plaintiff's railroad two car loads of lumber from Bigler, Pennsylvania, to Philadelphia, Pennsylvania, the plaintiff would pay for the charges of transferring and switching said cars from the Philadelphia & Reading tracks in Philadelphia to the Frankford siding on the Pennsylvania railroad tracks in that place. J. W. Allen, one of the defendants, testified positively in support of said agreement, while on the other hand, J. S. Hills denied positively that he had ever made such an agreement but he had merely stated that he would see if his company, the plaintiff, would pay such charges, and that J. W. Allen then replied to ship the lumber and he would take his chances of the plaintiff paying these charges. At the time of the alleged conversation between Allen and Hills the two cars of lumber, over which the controversy arose, were loaded ready for consignment on the New York Central & Hudson River Railroad Company's cars on its siding at Bigler station; that said cars had been placed there by mistake and J. W. Allen, for the defendants, had already issued orders that the lumber be unloaded from the plaintiff's cars and transferred to the Pennsylvania Railroad Company's cars on the latter company's siding a few rods away, and that this work had actually been begun. It was this mistake which caused the negotiations between Allen and Hills. The lumber was shipped to Philadelphia and was transferred to the Frankford siding at that place and defendants paid the transfer or switching charges of $68.16 and $4.00 demurrage, both of which sums it attempted to set off against the plaintiff's claim. The court disallowed the demurrage charge but submitted to the jury the switching charge of $68.16 which body returned a verdict as above stated for the defendant. Motions for new trial, in arrest of judgment and for judgment non obstante veredicto having all been overruled by the court, judg-

ment was entered on the verdict and hence this appeal.

Counsel for appellant states the question involved as follows: "Can plaintiff, a railroad company, be bound by the alleged verbal agreement of its traveling freight agent, without some proof of authority or ratification or benefit, where such alleged agreement is in its very nature unusual and a departure from the regular published freight rate and discriminatory and in violation of the laws of the state?"

On the part of the appellee the learned counsel states the questions involved in this way: "1. Is the agreement of plaintiff, a railroad company, to place freight on the Philadelphia siding of a competing line at the same rate charged by the competing line, an agreement discriminatory and in violation of the laws of the state, the plaintiff having no published or established rate to the siding in question, and there being no allegation that the same concession was ever asked for or desired by any shipper other than defendant?  2. Is plaintiff bound by such an agreement made by its traveling freight agent, who for several years had been quoting freight rates to defendants and arranging for the defendant's freight shipments, the agent's authority having never been questioned or controverted until after this dispute arose, and this agreement being the inducement which procured the shipment, via plaintiff's lines?"  In our opinion the defendant's statement of the questions involved fairly brings the real contention before the court.

The learned court below very fairly submitted the dispute between Allen and Hills, as to the agreement, to the jury and the verdict indicates that the jury found in favor of Allen's contention, in substance, that if the defendants would allow the two cars of lumber to be shipped to Philadelphia over the plaintiff's road, the transfer charges at Philadelphia would be paid by the plaintiff company.  And it being undisputed that the defendants had paid these charges, they would be entitled to set off the same against the plaintiff's claim, if the latter was

bound by the agreement made by J. S. Hills, traveling freight agent of the plaintiff, and J. W. Allen for the defendants.

In the first place we cannot see, in view of the conceded facts, that said agreement was discriminatory, nor that it was violative, either of any public policy, or of the constitution or laws of Pennsylvania, because it is a conceded fact that the freight rate from Bigler station to Philadelphia is the same via either the New York Central & Hudson River Railroad or the Pennsylvania Railroad Company's lines. It is also conceded that the amount of switching charges fixed by the New York Central & Hudson River Railroad Company for transferring the cars from the Philadelphia & Reading Railroad to Frankford siding was an excess over their published rate to Philadelphia. How could there be any discrimination in an agreement by the plaintiff to absorb or pay such excess charges unless some other shipper were denied the same terms? As we understand this record it nowhere appears that any other shipper asked for and was refused such concession. This transaction was peculiar and unusual and its inception appears to have grown out of a mistake and the apparent anxiety of J. S. Hills, traveling freight agent for the plaintiff, to secure the shipment of the two car loads of lumber. It further appears that there was no published or established rate from Bigler, Penna., to Frankford siding in Philadelphia, via New York Central & Hudson River Railroad Company's lines. But in effect the agreement made by Mr. Hills, acting for the plaintiff company, established a rate to this particular point in Philadelphia for these two cars of lumber.

The very term discriminate presupposes some person or persons, natural or legal, who are treated to their detriment. There is not even an allegation here that any other shipper was denied the same rate to Frankford siding in Philadelphia. Then how can it be said that there has been any discrimination? We here quote

from the learned referee in Borda v. Railroad Co., 141 Pa. 484, which report was approved by the Supreme Court: "Arbitrary discrimination is illegal; so, discrimination made with a view of giving advantage to one person. But the truism that circumstances alter cases applies here, and under a different state of circumstances, a discrimination may be reasonable and lawful, which, were the circumstances the same, would be undue and unreasonable. In order to render lawful an inequality of charge, the goods must be carried under different circumstances, and the question whether the difference is material or essential arises in each particular case." See also Hoover et al. v. Penna. R. R. Co., 156 Pa. 220.

"There may, however, be a discrimination in rates when founded upon a reasonable difference in the conditions attending the different shipments. Thus a lower rate may be granted at competing points, than at points where there is no such competition:" 6 Cyc. 498. We cannot see that there was any discrimination in the present case against any person or persons natural or artificial, "for a like service in the same place upon like conditions and under similar circumstances:" Borda v. R. R. Co., 141 Pa. 484.

We next consider the question of whether the plaintiff company is bound by the agreement which the jury found Hills made, for it, with the defendants. The learned court having fairly submitted the question of fact, as to this agreement, and it being conceded that Hills had been acting for several years as traveling freight agent for the plaintiff, the court held that his contract in securing freight for his road would bind the plaintiff on the theory that he was at least acting within the scope of his apparent authority. We think this was correct in this case because it was a conceded fact that he had many times quoted freight rates and negotiated with the defendants in regard to shipments of freight over the plaintiff's road and that his authority had never been called in question so far as J. W. Allen knew.

"Apparent authority is such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess:" 31 Cyc. 1236, note 62. "The apparent authority of an agent which will be sufficient to bind the principal for acts done thereunder is such authority as he appears to have by reason of the actual authority which he has:" 31 Cyc. 1236, note 62. "In legal significance an agent's authority is the sum total of the powers which his principal has caused or permitted him to seem to possess. It is not limited to the powers actually conferred, and those to be implied as flowing therefrom, but includes as well the apparent powers which the principal by reason of his acts or conduct is estopped to deny:" 31 Cyc. 1326, sec. 2.

In Lauer Brewing Co., Ltd., v. Schmidt, 24 Pa. Superior Ct. 396, the above doctrine is substantially affirmed. "In determining whether a contract made for the carrier by an agent is binding, the principles of agency are applicable, and if the contract is within the general scope of authority of the agent, the carrier will be bound thereby, although the agent has acted beyond his instructions in the particular case:" 6 Cyc. 431.

The law is well settled that the principal is bound by the contract of his agent acting within the scope of his apparent authority: Tanner v. Oil Creek R. R. Co., 53 Pa. 411; Baltimore & Phila. Steamboat Co. v. Brown, 54 Pa. 77; Young v. Penna. R. R. Co., 115 Pa. 112; Parker v. Citizens' Insurance Co., 129 Pa. 583.

"A local freight agent or station agent of a railroad company is presumed to have authority to contract for shipment of goods over the lines of the company, and to make any contract which the company itself could make:" 6 Cyc. 431. "Knowledge of limitation of the agent's general authority must be brought home to the shipper in order to defeat a contract made by him:" 6 Cyc. 431. "An agent having authority to contract for shipment of goods has also apparent authority to contract as to

the rates of charge and as to rebates to be allowed the shipper, if a contract for rebates would be valid:" 6 Cyc. 433.

As we have already seen, J. S. Hills had been acting as a traveling freight agent for the plaintiff company for several years, and the defendants had transacted business with him as such during that period, and Mr. Allen testified that Hill's authority had never been questioned, to his knowledge, and, therefore, it would seem that the defendants were fully warranted in assuming that Hills had authority to make the contract in question, thereby securing to his company, the plaintiff, the shipment of the two car loads of lumber which would otherwise have gone to a competing company, and this would seem to have been a material benefit to the plaintiff resulting from the contract made by Mr. Hills with the defendants.

The seventh assignment of error seems to be regarded important by counsel. It arose in this way: The plaintiff's case was made out, prima facie, by the defendants' admission, subject to their right to prove a set-off. J. S. Hills was only called in rebuttal and he testified, inter alia, that he had been traveling freight agent for the plaintiff company since 1906, and was still such agent in December, 1910; that he directed that the cars of lumber be sent over plaintiff's road to Philadelphia. Plaintiff's counsel then asked Mr. Hills, "Had you authority to make any such contract as is alleged here by Mr. Allen? A. No, sir." This question and answer were, on motion of defendants' counsel, stricken out. This we think was not error. If this question and answer had been permitted to go to the jury it would have furnished them an opportunity to find against the defendants' claim, even though Mr. Hills acted, in making the contract in question, strictly within the scope of his apparent authority. The question was faulty in that it called for a legal conclusion of the witness. If the question and answer had been allowed to stand the result might, in effect, have been to allow the witness to decide a legal

question while sitting in the witness chair. It would have been proper for the plaintiff to prove by Mr. Hills the scope of his authority by showing what duties he performed and for what length of time and then a legal question would have arisen for the court to say whether in making the contract with the defendants, as found by the jury, Mr. Hills acted within the scope of his authority, real or apparent. As the testimony stood at the close of the trial, the court did not err in instructing the jury that said contract, if made as testified by Mr. Allen, was within Mr. Hills' apparent authority. We do not sustain the seventh assignment.

The learned court below appears to have made a harmless mistake in giving the same answer to plaintiff's first and second points (second and third assignments), but we think this did the plaintiff no harm because it was not entitled to an affirmation of either of said points, and the answer given by the court to the first point was, to say the least, milder than a refusal which would have been right. As to the answer to the second point we think it was correct.

While the first assignment may be open to criticism, as to form, we do not find that it raises reversible error. We find nothing in the remaining assignments requiring special discussion. We think the case was tried fairly and that no serious errors were committed by the court.

The assignments of error are all dismissed and the judgment is affirmed.