## T. L. Smith Company *v.* Burd P. Evans & Company, Incorporated, Appellant.

*Principal and agent—Evidence as to agency—Declarations of agent—Burden of proof—Ratification.*

1. The burden of proving both the fact of agency and its scope lies on him who asserts them. Prima facie, the powers of an agent are limited to those expressly granted, or arising by implication from the character of the grant. The burden of proof lies on him who asserts that they have been enlarged by the acts of the principal.

2. A selling agent for an elevator has no authority, under his agency to sell, to agree that the principal would resell the machine for the purchaser's benefit at two-thirds of its cost price whenever the purchaser might determine not to use it longer, and whatever might be its condition and value at that time. A letter written long after the sale by the principal to the purchaser stating that the former had learned, at some time not stated, that the agent had promised that he, the agent, would try to make some disposition of the elevator for the benefit of the purchaser is not an admission on the part of the principal of precedent authority to make the agreement, nor does it furnish stable ground for an implication of a ratification of the alleged contract.

Argued Dec. 9, 1913. Appeal, No. 289, Oct. T., 1912, by defendant, from judgment of C. P. No. 5, Phila.

Co., Sept. T., 1910, No. 765, on verdict for plaintiff in case of T. L. Smith Company v. Burd P. Evans & Company.    Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.    Affirmed.

Assumpsit to recover the price of a concrete mixing machine.    Before RALSTON, J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $285.57.    Defendant appealed.

*Errors assigned* were in giving binding instructions for plaintiff.

*Henry K. Fries*, with him *J. Washington Logue* and *Charles L. Taylor*, for appellant.

*Samuel W. Cooper*, for appellee.

OPINION BY RICE, P. J., April 20, 1914:

The contract on which this action of assumpsit was founded, consisted of a written offer by plaintiff, accepted in writing by defendant, to sell and deliver to defendant a Smith Concrete Mixer with gasoline engine for a specified price in cash. The defendant admitted the execution of the contract, the delivery of the articles contracted for and its indebtedness to the plaintiff for the balance of the purchase price claimed in the action, but alleged a set-off. This set-off was a claim for damages for the breach of another contract alleged to have been made on the same day as the contract sued on, whereby the plaintiff "through the Pierce-Walton Company, its duly authorized agent," contracted to sell, and did sell and deliver, to the defendant a cement elevator with certain attachments, for a specified price

"with the express understanding that plaintiff would sell same for the defendant within a reasonable time after defendant finished using same, for about sixty-six per cent of the cost price, or $321.10." The above quotations are from the affidavit of defense which contains the special matter referred to in the notice filed with the plea. The breach, as alleged, consists in this: that though the defendant paid the plaintiff the stipulated price for the elevator, yet when it notified the plaintiff that it had finished using it and was ready to deliver it to the plaintiff in first class condition, the plaintiff refused to carry out its agreement to sell the same for about sixty-six per cent of its cost price. The sum claimed as damages for the breach was the difference between $321.10 (which was sixty-six per cent of the cost price) and the net sum the defendant received at a duly advertised and conducted auction sale of the property. The first question to be considered is as to the sufficiency of the evidence to support a finding that there was a contract which bound the plaintiff to resell the machine for the defendant's benefit when the latter finished using it.

Burd P. Evans, the president and treasurer of the defendant company, testified that the elevator was bought in the forenoon and the mixer in the afternoon of the same day and that both of these transactions were with H. T. Pierce of the Pierce-Walton Company. He further testified that Mr. Pierce made an offer to which the following letter was a reply and that after it was written, the defendant received possession of the elevator. The letter was signed with defendant's name and was addressed to the "Pierce-Walton Company and the T. L. Smith Company." We quote its material parts: "We accept your proposition to furnish and deliver a cement elevator . . . . for the sum of Five Hundred and Fifty-six ($556) Dollars, less twelve one-half per cent . . . . to be paid for in ten days from this date. We understand that the elevator is to include brack-

ets, . . . . and that this purchase is based on your claim to sell the hoist for us within a reasonable time after we have notified you that we have finished using it, for about sixty-six per cent of the cost price or $321.10. We enclose herewith check for $86.50 on account of purchase and this arrangement." Six days later the defendant wrote a letter addressed to the Pierce-Walton Company and the T. L. Smith Company jointly as follows: "Enclosed please find our check of this date, endorsed to your order for $400 in full for balance due you by us for cement hoist per our order and arrangement dated 9/16/9. Please send us receipt in full including receipt for the $86.50, which we sent you 9/16/9." The check here referred to was drawn by the defendant to its own order and after being indorsed by it "to the order of the Pierce-Walton Company and the T. L. Smith Company . . . . in full for balance of cement elevator, as per our order" was indorsed by H. T. Pierce, president, and deposited in bank to the credit of the Pierce-Walton Company. That the check was paid is shown by the receipt dated two days later, which was signed "The Pierce-Walton Company, Agts. for the T. L. Smith Company, by H. T. Pierce, Phila. Mgr."

On April 20 of the following year the defendant wrote directly to the plaintiff at Milwaukee, Wisconsin, calling the latter's attention to a former letter by the defendant to the plaintiff, "asking you to take the hoist as per your agreement, and received an answer from you dated 3/31 saying: "Have yours of March 28th in reference to elevator. Will say that we would have answered your letter before this, but our Mr. H. T. Pierce has been out of town and we have been expecting him back every day, but got word from him this morning that he would not be back until some time next week. Therefore as soon as he returns, we will refer this matter to him." On May 6 the plaintiff wrote to the defendant as follows: "In further reference to yours of

April 20 in which you ask us to make some disposition of the hoist which you purchased in connection with a mixer: We are pleased to advise that the Pierce-Walton Company are making an effort to dispose of the equipment for you. We are advised that Mr. Pierce promised you when he made the sale that when you are through with it he will try and make some disposition of it for you, and we think it very likely that he will soon find a place where the hoist can be resold at a satisfactory price to you. We hope this will be taken care of to your full satisfaction, and we remain." The defendant's two subsequent letters of June 16, and July 23, 1910, which were addressed to the Pierce-Walton Company and the T. L. Smith Company jointly, and so far as appears were not replied to, do not throw any additional light on the question for decision, namely, the authority of the Pierce-Walton Company as agent for the company, and need not be recited.

To prevent misunderstanding, it should be observed with regard to the documentary evidence above recited, excepting the letters of April 20 and May 6, that though the papers were addressed to the Pierce-Walton Company and the T. L. Smith Company jointly, there is no evidence that they were delivered or mailed to the plaintiff or that they got beyond the Pierce-Walton Company. Indeed Mr. Evans testified as to one of them, that it was sent to the place of business of the Pierce-Walton Company "who were acting as agent for the Smith Company," and it is left to be inferred from the place of business mentioned in the others that the same is true of them. It is apparent therefore, we think, that this documentary evidence was insufficient to support a finding that the Pierce-Walton Company, which acted as the plaintiff's agent in selling the elevator to the defendant, had authority to bind its principal by the contract for resale upon which the defendant relies as the foundation of its set-off. For the same reason, it would not support a finding that the plaintiff

permitted the Pierce-Walton Company to hold itself out as having authority to make such a contract on the plaintiff's behalf.  But, it is argued, ratification of unauthorized acts of agents will be implied from long acquiescence therein by the principal, and when the rights of third parties are involved ratification will be implied if the principal does not disavow the act as soon as it comes to his knowledge.  The contention of defendant's counsel that this principle is applicable here is based on the letter of May 6, but a careful perusal of that letter does not lead to the conclusion that the plaintiff knew that the Pierce-Walton Company had contracted on behalf of its principal to resell the elevator; much less does it warrant the inference that it knew that its selling agent had engaged that the plaintiff would resell the machine for the defendant's benefit at two-thirds of its cost price whenever, in the indefinite future, the defendant might determine not to use it longer, and whatever might be its condition and value at that time.  The most unfavorable inference that can be drawn against the plaintiff from the letter is that the plaintiff learned, at some time not stated, that Mr. Pierce promised when the sale was made, that when the defendant was through with the machine he, Mr. Pierce, "would try" to make some disposition of it for the defendant.  The letter cannot be interpreted fairly as an admission that the agent had precedent authority to make the binding contract for resale, alleged in the notice of special matter; nor does it furnish stable ground for an implication of the plaintiff's ratification of that alleged contract.

The principle applicable to the case is this: "The burden of proving both the fact of agency, and its scope, lies on him who asserts them.  Prima facie, the powers of an agent are limited to those expressly granted or arising by implication from the character of the grant. The burden of proof lies on him who asserts that they have been enlarged by the acts of the principal;"

Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396; Dodge v. Williams, 47 Pa. Superior Ct. 302. Even if it be conceded that the alleged contract was not void for uncertainty, it also must be conceded that the power to make such an extraordinary contract is not presumably or impliedly within the general scope of a selling agent's authority. Therefore, it was incumbent on the defendant to prove otherwise than by the acts and declarations of the agent, the Pierce-Walton Company, that the agent had precedent authority to make it or that the plaintiff ratified its act. The evidence adduced by the defendant being insufficient in law to support a finding of these essentials, the court was right in not submitting the question of set-off to the jury and in giving binding direction to find for the plaintiff for the amount admittedly due.

The judgment is affirmed.