## McCafferty v. McCafferty et al.

*Equity — Jurisdiction — Certification to law side of court — Answer — Demurrer—Pleading—Practice, C. P.—Mines and mining—Lease—Principal and agent—Act of June 7, 1907.*

1. Under the Act of June 7, 1907, P. L. 440, where the defendant in an equity suit desires to question the jurisdiction of the court, he may raise the question in the answer without filing a demurrer.

2. Where a clear right is involved and there is no serious dispute as to the existence of such right, equity has jurisdiction to afford relief, but where the right is controverted, a question of fact arises which should be submitted to a jury.

3. On a bill in equity to restrain the mining of coal, where plaintiff avers that he had not authorized any one to mine coal on his lands, and the defendant sets up authority to mine under a parol lease made by an agent of plaintiff duly authorized to make the lease, a material question of fact is raised, which requires the court to certify the case to the Common Pleas to be passed upon by a jury.

Motion to certify the case to the law side of the court under the Act of June 7, 1907, P. L. 440, for want of equity jurisdiction. C. P. Columbia Co., Sept. T., 1922, No. 4.

*Clinton Herring* and *H. Montgomery Smith,* for plaintiff.

*E. J. Mullen* and *G. W. Moon,* for defendants.

POTTER, P. J., 17th judicial district, specially presiding, Oct. 11, 1922.—In this case a preliminary injunction was granted to restrain the defendants, or

3 D. & C.

one of them, Daniel Bankes, from mining coal from the lands of the plaintiff; a preliminary hearing was had, at which the injunction was continued; the bill was filed, which was replied to by answer setting up, *inter alia*, want of jurisdiction of a court of equity, and a motion was presented asking to have the case certified to the law side of the court. This is the only question before the court. No demurrer has been filed except as contained in the answer.

The Act of June 7, 1907, P. L. 440, provides that "if the defendant desires to question the jurisdiction of the court upon the ground that the suit should have been brought at law, he must do so by demurrer *or answer*, explicitly so stating, or praying the court to award an issue or issues to try questions of fact. . . ."

It will thus be seen that the question of jurisdiction can be raised in the answer without demurrer being filed.

The fourth paragraph of the plaintiff's bill sets out as follows:

"(4) That since acquiring the coal lands aforesaid, your orator has at no time conducted or authorized the conducting of any mining operations thereon. That during said time he employed the said Robert L. McCafferty, one of the defendants, as a watchman or caretaker, to look after the buildings and machinery on said premises, but for no other purpose."

The fourth, fifth, sixth and seventh of the answer set out as follows:

"(4) Answering paragraph '4' of plaintiff's bill of complaint, it is not true, and I deny that said Charles K. McCafferty since acquiring said lands has at no time conducted or authorized the conducting of any mining operations thereon; I deny that said Charles K. McCafferty employed said Robert L. McCafferty only as a watchman or caretaker, to look after the buildings and machinery on said premises, and aver that for eighteen years or upwards, last past, said Robert L. McCafferty has been in full and complete charge of the lands in question and acted as agent for the owners, including said Charles K. McCafferty; that during all that time, under the agency and management of said Robert L. McCafferty, it was the usual and customary thing for said lands to be worked in a small way to get out coal for the farmers and to furnish coal for the schools in the neighborhood; these small mining operations consisted of taking out pillars or small quantities of coal left by former operations conducted many years ago on said lands; that the arrangements for taking out coal in small quantities as aforesaid were made by said Robert L. McCafferty, the agent and manager in charge of said property, and some of said small mining operations have been carried on for nine years or more last past, and the royalties for the coal mined in small operations have been regularly paid to said Robert L. McCafferty, the agent and manager aforesaid, from the time of the beginning of the mining up to the present time.

"(5) It is not true, and I deny the truth of the statement contained in paragraph '5' of plaintiff's bill of complaint; I deny that I entered into any conspiracy to cheat and defraud the plaintiff or that I mined any coal in pursuance of any conspiracy as alleged in said paragraph '5,' but aver that I entered into a *bona fide* verbal agreement with said Robert L. McCafferty, who was the agent of the plaintiff in full and complete charge of the property, to mine coal on said premises for a fixed royalty per ton, and since said agreement have mined coal under the terms of said agreement and paid the royalties to said agent.

"(6) It is not true, and I deny the statements contained in paragraph '6' of plaintiff's bill of complaint; I deny that any conspiracy was formed or carried out and coal removed by me without authority from the plaintiff and

without his knowledge or consent, and aver that a *bona fide* verbal agreement was made by said R. L. McCafferty with me, at the solicitation of said R. L. McCafferty, who at the time was the agent and manager of said property for said Charles K. McCafferty. I further aver that all coal mined and removed by me since the date of said agreement was mined and removed under said agreement.

"(7) I deny the truth of the statements contained in paragraph '7' of plaintiff's bill of complaint as set forth, and aver that said Charles K. McCafferty had both actual and constructive notice that I was mining coal on the lands in question for several years prior to June, 1920; long before this latter date I had spent large sums of money in opening up old workings and equipping the mines to take out remnants of coal left by former operators, all of which was clearly observable and well known to said Charles K. McCafferty. I deny that I was a trespasser and removing coal without right, and aver that I was mining coal under the authority of the duly authorized and qualified agent of said Charles K. McCafferty, viz., Robert L. McCafferty, to whom I paid my royalties regularly and took receipts for the same; when said Charles K. McCafferty came to my mining operations about May or June, 1920, where I had expended large sums of money in work, equipment and improvements of said mines, and verbally told me to quit the premises, I did not quit for the reason that I had made extensive improvements at great expense and was there of right under his own agent. I deny that I agreed and promised to quit the premises, and I deny that I did quit the premises, and aver that I continued to mine under the agreement with said agent, to whom I continued to pay my royalties. I deny that I received written notice in the month of June, 1920, or at any other time from said Charles K. McCafferty to quit said premises, and aver that said Robert L. McCafferty continued to act as agent and manager of said property as he had done before, visiting me at my mining operations within a day or two after said Charles K. McCafferty had visited me at my mining operations, told me to get out as much tonnage as possible, continued to visit me frequently at my mining operations, and collected the royalties regularly for all coal mined and sold from said mining operations up to the bringing of this suit."

The substance of these paragraphs, as well as those that follow, all set up the agency of Robert L. McCafferty as agent for the plaintiff, as well as his authority to enter into the agreement made by him with Daniel Bankes, one of the defendants, for and in behalf of Charles K. McCafferty, and that is the only reason they are used in this opinion.

It is plainly seen that the authority of Robert L. McCafferty in regard to the coal land owned by Charles K. McCafferty, the plaintiff, is in dispute, the plaintiff contending that he was employed as his "watchman or caretaker, to look after the buildings and machinery on the premises, and for no other purpose," and the said Daniel Bankes, one of the defendants, in fact the only active defendant so far in the case, contending that he was the agent of the plaintiff, with full authority to enter into a verbal contract with him, the said Daniel Bankes, for the mining of coal on the premises by the payment of a certain royalty per ton, and it is claimed by the said Daniel Bankes that this is a question of fact to be passed upon by a jury, and not a question to be submitted to a chancellor, and he so states in his answer.

In the case of Miles Land Co. *v.* Pennsylvania Coal Co., 231 Pa. 155, the bill prayed for an injunction to restrain the defendant from mining coal under two parcels of land which were claimed by both parties. The case was

certified to the law side of the court, and this action on the part of the Common Pleas judge was sustained by the Supreme Court, on appeal, as being a question involving title to land and a question for a jury.

There the question was one of title to lands. Here it is one as to the validity of a lease. In the former the question was, who owned the land. In the case at bar it is, who has the right to mine the coal, questions very much similar.

In the case of Wilmore Coal Co. v. Holsopple, 251 Pa. 268, on page 272, we have it laid down that "equity will not restrain an interference with a doubtful legal right involving disputed questions of fact." The disputed question in this case being, how far did the authority of Robert L. McCafferty reach? Did he have the right to make the lease depended upon by the defendant?

It is clear that equity will restrain a threatened interference with the exercise of a right without prior adjudication of it at law only where it is clear and there is no serious dispute as to any of the material facts connected with it: Piro v. Shipley, 211 Pa. 36.

But who will say there is not a material disputed fact in this case when agency is disclaimed by the plaintiff and where it is maintained by the defendant?

In Rice v. Ruckle, 225 Pa. 231, it is laid down as a principle of law that the question of jurisdiction may be raised by the answer, no demurrer being filed.

In Duncan v. Hartman, 143 Pa. 595, the scope of the agent's authority was held to be a question for the jury, and this principle is reiterated in the case of New York Central & Hudson River R. R. Co. v. Deer Creek Lumber Co., 49 Pa. Superior Ct. 453, where it was held that the scope of the agency may be proved by showing what duties the agent performed and for what length of time.

In Nanheim v. Smith, 253 Pa. 380, it is said: "The question was distinctly raised by the answer, and it was the duty of the learned chancellor to have determined the question *in limine*, and to have certified the case to the proper jurisdiction."

It would not be proper to consider anything set up in the answer at this time, except such matters as raise the question of jurisdiction, and in this respect we quite agree with the proposition submitted so ably by counsel for the plaintiff, namely, that the question of jurisdiction must be decided on the averments contained in the plaintiff's bill; but we also must take into consideration that part of the answer which alleges want of jurisdiction and the reasons going to support such allegation. At this state of the case the merits of the case cannot be gone into. Where the clear right of one has been invaded, and there is no serious dispute as to the existence of that right, equity has jurisdiction to afford relief, but where that right is controverted, a question of fact arises which should be submitted to the jury.

In this case the authority of Robert L. McCafferty, as agent for the plaintiff, to enter into an agreement with the defendant to mine coal, is flatly disputed by the plaintiff, and is strenuously affirmed by the defendant, thus raising a question of fact which we think should be passed upon by a jury. If Robert L. McCafferty had such authority, then the defendant may be within his legal rights. If he had not such authority, then the defendant may be a trespasser. This seems to be the pivotal question in the case, and on it depends the final outcome.

Should the defendant, after this disposition of the case, again begin his mining operation on the lands in question, a writ of estrepement may issue,

which will have the same force and effect as a continuation of the injunction already granted.

And now, to wit, Oct. 9, 1922, for the reasons herein given, this case is certified to the law side of the Common Pleas for disposition, and the injunction heretofore granted is dissolved. An exception is noted for the plaintiff and a bill is sealed.

From R. S. Hemingway, Bloomsburg, Pa.